```
THIS OPINION
IS A PRECEDENT OF THE
T.T.A.B.
```

Mailed:
6/4/2008

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

In re DSM Pharmaceuticals, Inc.

_____

Serial No. 78373640

_____

Laura M. Kelley of Myers, Bigel, Sibley & Sajovec for DSM
Pharmaceuticals, Inc.


Khan M. Le, Trademark Examining Attorney, Law Office 113
(Odette Bonnet, Managing Attorney).

_____

Before Walters, Bucher, and Ritchie de Larena,
Administrative Trademark Judges.

Opinion by Ritchie de Larena, Administrative Trademark
Judge:


DSM Pharmaceuticals, Inc. filed an application to
register the mark LIQUIDADVANTAGE, in standard character
format, for "custom manufacturing of pharmaceuticals
featuring liquid fill and finish technology," in
International Class 40.[1]

A Notice of Allowance was issued on March 14, 2006.

_____

[1] Application Serial No. 78373640, filed February 25, 2004,
pursuant to Section 1(b) of the Trademark Act, 15 USC §1051(b),
alleging a bona-fide intent to use in commerce.

Applicant filed a Statement of Use on September 11, 2006, including the required specimen. The trademark examining attorney refused registration under Trademark Act Sections 1, 2, 3, and 45; 15 U.S.C. §§ 1051, 1052, 1053 and 1127, on the ground that the proposed mark as shown in the specimen does not function as a service mark to indicate the source of the services.

Upon final refusal of registration, applicant filed a timely appeal. Both applicant and the examining attorney filed briefs. For the reasons discussed herein, the Board affirms the final refusal to register.

To show service mark usage, the specimen must show use of the mark in a manner that would be perceived by potential purchasers as identifying the applicant's services and indicating their source via a "direct association." *In re Universal Oil Products Co.*, 476 F.2d 653, 177 USPQ 456 (C.C.P.A. 1973) (term that identified only a process held not registrable as service mark, even though applicant was rendering services and the proposed mark appeared in the same brochure in which the services were advertised); *In re Moody's Investors Service Inc.,* 13 USPQ2d 2043 (TTAB 1989) ("Aaa," as used on the specimen, identified the applicant's ratings rather than its rating services and therefore did not function as a mark); *Intermed Communications, Inc. v. Chaney*, 197 USPQ 501 (TTAB 1977) (business progress reports directed to potential investors did not show service mark use for medical

services); *In re Restonic Corp.*, 189 USPQ 248 (TTAB 1975) (phrase used merely to advertise goods manufactured and sold by applicant's franchisees did not serve as mark to identify franchising services); *In re Reichhold Chemicals, Inc.,* 167 USPQ 376 (TTAB 1970) (technical bulletins and data sheets on which mark was used merely to advertise chemicals did not show use as service mark for consulting services). Where the mark is used in advertising the services, the specimen must show a direct association between the proposed mark and the services for which registration is sought. A specimen that shows only the mark with no reference to, or association with, the services does not show service mark usage. *In re Adair,* 45 USPQ2d 1211 (TTAB 1997) (tags affixed to decorated Christmas tree that bear the mark "TREE ARTS CO. and design" and the applicant's location, but make no reference to services, failed to show use for "design services in the nature of designing handcrafted, permanently decorated Christmas and designer trees"); *In re Duratech Industries Inc.,* 13 USPQ2d 2052 (TTAB 1989) (bumper stickers showing only the mark did not show use to identify "association services, namely promoting the interests of individuals who censor the practice of drinking and driving"); *In re Riddle*, 225 USPQ 630 (TTAB 1985) (cutouts showing mark with no reference to the services held unacceptable for automotive service center); *In re Whataburger Systems, Inc.,* 209 USPQ 429 (TTAB 1980) (iron-on transfer clothing

patches in the form and shape of a cartoon animal mark, distributed as free promotional items to restaurant customers at counters, held insufficient to identify restaurant services).

The specimen submitted by applicant to show use of its identified service consists of one page of a brochure:



As the examining attorney observed, the term LIQUIDADVANTAGE in this specimen clearly refers to a proprietary software by that name. Nowhere does the specimen show a direct association between use of the proposed LIQUIDADVANTAGE mark and "custom manufacturing of pharmaceuticals featuring liquid fill and finish technology." We note that if a mark is used to identify *both* the system or process *and* the services rendered by means of the system or process, the designation may be registrable as a service mark. *See Liqwacon Corp. v. Browning-Ferris Industries, Inc.*, 203 USPQ 305 (TTAB 1979) (mark registrable where it identified both a waste treatment and disposal service and a chemical solidification process). However, that is not the case here, where every description and explanation of LIQUIDADVANTAGE on the specimen refers to the capabilities and the purported advantages of the LiquidAdvantage software alone. *See In re Information Builders Inc.*, 213 USPQ 593 (TTAB 1982) (Board affirmed refusal to register where mark was used in specimen to refer only to software and not to service for which applicant sought registration); *cf. In re Ancor Holdings*, 79 USPQ2d 1218 (TTAB 2006) (Board determined that term "tool" in specimen referred to service since applicant did not even offer software). Applicant's submitted specimen does reference "liquid fill and finish capabilities" as a service offered

by applicant, but does not directly associate that service with its proposed LIQUIDADVANTAGE mark.

In determining whether a specimen is acceptable evidence of service mark use, we may consider applicant's explanations as to how the specimen is used, along with any other available evidence in the record that shows how the mark is actually used. *See In re Int'l Environmental Corp*., 230 USPQ 688 (TTAB 1986), in which a survey distributed to potential customers of applicant's heating and air conditioning distributorship services was held to be an acceptable specimen even though it did not specifically refer to the services, where the applicant stated that the sale of its services involved ascertaining the needs of customers serviced, and the record showed that the surveys were directed to potential customers and were the means by which applicant offered its distributorship services to the public. *See also In re Metriplex Inc*., 23 USPQ2d 1315 (TTAB 1992)(Board accepted computer screen display as specimen to show sale of computer data transmission services); *In re Eagle Fence Rentals, Inc*., 231 USPQ 228 (TTAB 1986) (Board accepted photograph of chain link fence as specimen to show alternately colored strands of wire arranged in the fencing); *In re Red Robin Enterprises, Inc*., 222 USPQ 911 (TTAB 1984) (Board accepted photograph of costume worn by performer during performance as specimen to show entertainment services). However, here

the record is sparse.  Applicant has given us only the specimen to evaluate.  We simply cannot conclude, based on the specimen of record, that applicant is using the LIQUIDADVANTAGE mark in connection with "custom manufacturing of pharmaceuticals featuring liquid fill and finish technology."

This case is analogous to *In re Walker Research, Inc*., 228 USPQ 691 (TTAB 1986) (term that merely identified computer program used in rendering market analysis services did not function as a mark to identify those services). There the Board affirmed the refusal to register where the use of the proposed mark in the specimen clearly referred to a software product rather than to the service for which the applicant sought registration.  Importantly, the Board found it irrelevant that the software was used in performance of the identified service.  Without direct association between the service and the proposed mark in the specimen, the Board could not conclude that the service mark was in use.  As explained by the CCPA in *In re Universal Oil Products Co*., 177 USPQ at 457, it is insufficient for an applicant to use the desired mark in connection with the advertisement of a *process* where applicant seeks to register that mark in connection with a *service* even though, as here, the brochure may also mention the service apart from the mark.  In the words of the CCPA: "Direct association is the minimum it must show."

Therefore we conclude that applicant's specimen does not show actual service mark use of the mark LIQUIDADVANTAGE for "custom manufacturing of pharmaceuticals featuring liquid fill and finish technology."

Decision:  The refusal to register is affirmed.